Filed 2/21/25  P. v. Hernandez CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANTONIO CAMPOS HERNANDEZ,<br><br>    Defendant and Appellant. | H050928<br>(Monterey County<br> Super. Ct. No. 21CR000746) |

A jury convicted Antonio Campos Hernandez of a felony sex offense against a minor. Hernandez challenges his conviction by arguing the district attorney made comments during the rebuttal closing argument at trial that were intended to inflame the jurors' passions and emotional responses. Hernandez contends his defense counsel's failure to object to the statements made by the district attorney constituted ineffective assistance of counsel. Because we conclude the record does not affirmatively demonstrate ineffective assistance of counsel, we affirm the judgment.

## I.    BACKGROUND

On June 10, 2021, the district attorney charged Hernandez with a single felony count of a lewd act upon a child (Pen. Code, § 288, subd. (a) [count 1]). At trial, the prosecution presented the following evidence. Jane Doe was born in January 2008. She has three sisters, one older and two younger. Hernandez, who was Doe's mother's boyfriend, has a daughter and a son from a prior relationship, both of whom are older

than Doe, and is also the biological father of Doe's two younger sisters. At the time of the incident underlying the charge, in October 2020, Doe lived at her aunt's house in Watsonville because her family had lost their home a few months earlier.

Prior to the incident, Hernandez would sometimes ask for kisses on the cheek or hugs from Doe and she did not appreciate this because she did not feel close enough to him. Nevertheless, she felt compelled to do what he asked "[b]ecause he was an authority figure."

On October 19, 2020, Doe and her family spent the night at the house of Hernandez's daughter from his prior relationship. Doe slept on a bed in one room. Her mother, three siblings, and Hernandez slept in the same room; her sisters were on the bed with her, her mother slept on a couch, and Hernandez slept on a made-up bed on the floor.

During the night, Doe woke up because she "felt something in [her] private part." She saw Hernandez on his knees and his hands "were doing [an] inwards-outwards motion" over her underwear. Doe asked Hernandez what he was doing and Hernandez "mumbled something, and he went back to bed." Doe stayed in bed, thinking about whether to tell someone. After around an hour, she decided to report the incident to her mother.

Doe woke her mother and asked her to accompany her to the bathroom. Once they were in the bathroom, Doe closed the door and told her mother that Hernandez had touched Doe. Doe's mother initially told Doe that they would "deal with it in the morning." After they went back to the room, however, Doe told her mother that Hernandez was fake sleeping, and Doe's mother kicked Hernandez and he got up. Hernandez asked, "What did I do? What did I do?" Doe was angry and told him, "You know what you did."

Doe and her family left the house around 3:00 a.m. and went to her aunt's house. Hernandez did not try to stop them.

2

Hernandez testified in his defense at trial.  In 2023, at the time of trial, Hernandez was 50 years old.  He acknowledged that the sleeping arrangements were as described by Doe, but he denied that he had touched Doe.  Hernandez stated that Doe's accusation made him feel "Bad.  Confused."

As is relevant to this appeal, in the district attorney's rebuttal closing argument he pointed to Hernandez's conduct at the time of the incident, stating:  "Mr. Hernandez, this supposedly loving father, just let his children walk out the door without a fight.  He never really made any attempt to get them back.  Just a couple of text messages.  Now, why might somebody act like that?  It's because they don't want what they did to be said out loud.  They're trying to avoid that accusation.  They know it's out there, and they're slinking away."  The district attorney argued further:  "Look at his actions afterwards.  Those aren't normal.  Those are the actions of somebody who is afraid of being confronted with what he did."  The district attorney later commented that Hernandez "just snuck up, touched a 12-year-old's vagina, snuck away. . . . Why so feeble?  Why so feeble, if right and justice is on his side?  Why so pathetic?"

The district attorney concluded his rebuttal by telling the jurors:  "The law . . . will explicitly tell you that in cases like this, the testimony of the complaining witness, the testimony of Jane Doe is enough.  Now, why is there a specific instruction, that the law is telling you that Jane Doe is enough?  It is so that people who touch little girls, in the dark of the night, can't hide behind he said/she said.  The law provides that to you.  The law says Jane Doe was enough.  She was.  Don't let him avoid accountability by hiding behind the fact that he did it in the dark, when everybody was sleeping.  [¶]  I've told you that this case was about one voice, Jane Doe's voice.  I now ask each of you to add your voices to hers.  Twelve voices, in unison saying, we condemn the actions of this man.  He did what she says he did, and we will protect our little girls, when they cry out for help, in the middle of the night.  Thank you."

3

Before the start of testimony at trial, the court told the jury: "You must not be influenced in your decision by mere sentiment, conjecture, sympathy, passion, or prejudice towards any party, witness, or attorney, in this case, or public opinion, or public feeling. On the following day of trial, the court told the jury: "The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he's been arrested, charged with a crime, or brought to trial. A defendant in a criminal case is presumed to be innocent. This presumption requires the People prove the defendant guilty beyond a reasonable doubt."

Immediately following closing arguments, the trial court instructed the jury on the applicable law. As it had before, the court again told the jury: "Do not let bias, sympathy, prejudice, public opinion, influence your decision." The court also stated that, "[i]n their opening statements, and closing arguments, the attorneys discuss the case, but their remarks are not evidence. Their questions are not evidence. Only the witnesses' answers are evidence. . . . Do not assume something is true just because one of the attorneys asked a question that suggested that it was true."

The jury found Hernandez guilty. On March 28, 2023, the trial court suspended imposition of sentence and placed Hernandez on formal probation for three years. As one of the conditions of probation, the court ordered Hernandez to serve 364 days in jail.

Hernandez timely appealed.

## II.    DISCUSSION

Hernandez argues his constitutional rights were violated when the district attorney made "improper and inflammatory" comments in closing argument. Hernandez contends his own attorney's failure to object to the comments constituted ineffective assistance of counsel. We conclude Hernandez has not demonstrated either deficient performance by his counsel or prejudice.

4

We note that Hernandez challenges only defense counsel's performance and does not directly argue that the judgment must be reversed because of misconduct by the district attorney. This is for good reason: Hernandez forfeited any claim of prosecutorial misconduct. (*People v. Stanley* (2006) 39 Cal.4th 913, 952 [" '[A] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.]' ", quoting *People v. Samayoa* (1997) 15 Cal.4th 795, 841.] We therefore consider whether the prosecutor committed misconduct in argument solely to determine whether trial counsel's failure to object fell below the relevant standard of care, resulting in prejudice compelling reversal.

**A.**     ***Legal Principles***

To establish ineffective assistance of counsel, a defendant must show both deficient performance by counsel and prejudice. (*People v. Ochoa* (1998) 19 Cal.4th 353, 414.) The defendant first bears the burden of showing trial counsel's performance was deficient: that counsel's performance "fell below an objective standard of reasonableness" in light of the prevailing professional norms. (*Strickland v. Washington* (1984) 466 U.S. 668, 688 (*Strickland*).) " 'Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ' [Citations.] '[W]e accord great deference to counsel's tactical decisions' [citation], and we have explained that 'courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight' [citation]. 'Tactical errors are generally not deemed reversible, and counsel's decision making must be evaluated in the context of the available facts. [Citation.]' " (*People v. Weaver* (2001) 26 Cal.4th 876, 925-926 (*Weaver*).) "In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no

5

conceivable reason for counsel's acts or omissions. [Citations.]" (*Id*. at p. 926; see also *In re Cudjo* (1999) 20 Cal.4th 673, 692 [" '[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.' ", quoting *Strickland, supra,* 466 U.S. at p. 691.].) "Indeed, in assessing a Sixth Amendment attack on trial counsel's adequacy mounted on *direct* appeal, competency is *presumed* unless the record *affirmatively* excludes a rational basis for the trial attorney's choice. [Citations.]" (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1260 (*Musselwhite*).)

Second, the defendant must show the asserted deficiency in counsel's performance resulted in prejudice. (*Weaver*, *supra*, 26 Cal.4th at p. 961.) "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." (*Strickland*, *supra*, 466 U.S. at p. 697.) To establish prejudice, a defendant must demonstrate "there is a ' "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [Citation.]" ' " (*Weaver*, *supra*, at p. 955.)

**B.      *Hernandez did not Receive Ineffective Assistance of Counsel***

To determine whether defense counsel's performance was deficient, we first examine whether the district attorney committed misconduct in his rebuttal argument as Hernandez asserts. " '[A] prosecutor is given wide latitude to vigorously argue his or her case and to make fair comment upon the evidence, including reasonable inferences or deductions that may be drawn from the evidence. [Citation.]' " (*People v. Dykes* (2009) 46 Cal.4th 731, 768.) However, "[i]t has long been settled that appeals to the sympathy or passions of the jury are inappropriate at the guilt phase of a criminal trial." (*People v. Fields* (1983) 35 Cal.3d 329, 362, fn. omitted.) " 'It is . . . improper to make arguments

6

to the jury that give it the impression that "emotion may reign over reason," and to present "irrelevant information or inflammatory rhetoric that diverts the jury's attention from its proper role, or invites an irrational, purely subjective response." [Citation.]' " (*People v. Linton* (2013) 56 Cal.4th 1146, 1210 (*Linton*).)

"A prosecutor is allowed to make vigorous arguments and may even use such epithets as are warranted by the evidence, as long as these arguments are not inflammatory and principally aimed at arousing the passion or prejudice of the jury. [Citations.]" (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1251 (*Pensinger*).) The California Supreme Court has therefore held that statements such as referring to a defendant as a " 'perverted maniac' " or a "sadist" did not constitute prosecutorial error when "there was evidence in the record which, if the jury believed it, would warrant each of the arguments." (*Ibid.*; see also *People v. Thornton* (1974) 11 Cal.3d 738, 762-763.)

In support of his argument that the district attorney argued the case improperly, Hernandez cites *People v. Bandhauer* (1967) 66 Cal.2d 524 (*Bandhauer*), a case in which the California Supreme Court found the use of the word "depraved" by the prosecutor was error. *Bandhauer* is distinguishable because in that case the prosecutor made the testimonial statement that "defendant was one of the most depraved characters that the prosecutor had seen," a statement that was "not related to the evidence in the case and was not subject to cross-examination. It presented to the jury an external standard by which to fix the penalty based on the prosecutor's long experience." (*Id.* at pp. 529-530.) The district attorney here did not rely on his own personal experience or any facts outside the record.

Hernandez argues that the prosecutor's use of terms such as "feeble" or "pathetic" in reference to Hernandez, or stating that he was slinking or sneaking, were intended to paint him as an "innocuous predator" and invited the jury to hate and fear Hernandez on that basis. The district attorney's use of such language, however, was tied to the district attorney's argument, based on the evidence, that Hernandez's actions were those "of

7

somebody who is afraid of being confronted with what he did," and who "did everything that he could to avoid confrontation about it." The comment that Hernandez acted surreptitiously was a fair comment on Jane Doe's description of the molestation. In this context, the district attorney's use of terms such as "feeble" and "pathetic" was less damning than referring to a defendant as a "perverted maniac" or a "sadist," terms which the California Supreme Court in *Pensinger* found did not result in prosecutorial error.

Hernandez also objects to the conclusion of the district attorney's rebuttal argument: "I've told you that this case was about one voice, Jane Doe's voice. I now ask each of you to add your voices to hers. Twelve voices, in unison saying, we condemn the actions of this man. He did what she says he did, and we will protect our little girls, when they cry out for help, in the middle of the night." " 'It [i]s not improper for the prosecutor to argue that the jury would be acting as the representative of the community or for society as a whole. [Citation.]' " (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1178 (*Johnsen*).) The California Supreme Court has routinely upheld as proper the practice of comparing the jury to " ' "the conscience of the community. [Citation.]" ' " (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 789 [concluding it was not misconduct for the prosecutor "to urge the jury to solve the social problems of gangs and violence by returning convictions"].) However, it is improper to "invite the jury to view the case through the victim's eyes" or to appeal to jurors' sympathy for the victim to obtain a conviction. (*People v. Leonard* (2007) 40 Cal.4th 1370, 1406.)

Asking the jury to act as the voice of the community by condemning the defendant was proper argument; asking the jury to vindicate the complaining witness by reinforcing her "voice" was an invitation to stand in the shoes of the victim and an appeal to the jurors' sympathy for her, which was not proper. The district attorney's argument that Jane Doe's testimony, or "voice," was sufficient to return a conviction was proper. Cloaking that argument in an appeal to return a conviction to protect vulnerable little girls who cry out for help at night arguably was an invocation of community and parental fear

of the predation of children. These appear to be inflammatory comments, invoking an "irrational response," rather than encouraging the jury's assessment of the evidence or a just societal response to criminal conduct. (*Linton, supra,* 56 Cal.4th at p. 1210.)

However, assuming the district attorney's comments were improper, "a mere failure to object to evidence or argument seldom establishes counsel's incompetence. [Citations.]" (*People v. Ghent* (1987) 43 Cal.3d 739, 772 (*Ghent*).) The comments were brief and immediately followed permissible argument focusing on the instruction that allows a jury to return a guilty verdict based on the testimony of a single witness determined by the jury to be credible. Defense counsel may have concluded that an objection would run the risk of being overruled, and even if sustained, could have drawn undue attention to the statements just before the jury was instructed and retired to deliberate. (See *id*. at p. 773 ["[c]ounsel may well have tactically assumed that an objection or request for admonition would simply draw closer attention to the prosecutor's isolated comments"].) Therefore, because the record does not affirmatively exclude any rational basis for defense counsel's choice, competency must be presumed. (*Musselwhite, supra,* 17 Cal.4th at p. 1260.) Accordingly, we conclude Hernandez has not demonstrated his counsel's performance was deficient.

Further, even if the comments were improper, we conclude there was no prejudice constituting reversible error. Hernandez describes the district attorney's comments as infecting the entire rebuttal closing argument, stating "there truly was nothing significant in the prosecutor's rebuttal summation *except* the improper comments." A review of the record, however, shows the comments to which Hernandez now objects occurred at the end of the rebuttal argument. Earlier in the argument, the district attorney emphasized that the jurors could rely on Doe's testimony alone. He argued that Hernandez's actions, or rather his failure to act, when his wife and children left after the incident were consistent with and supported the accusations against him. The district attorney's limited comments in rebuttal did not rise to the level of prejudicial error. (See *Johnsen*, *supra*,

10 Cal.5th at p. 1179 [concluding that "the district attorney's statement urging the jurors to 'confront evil and eradicate it' " was "limited and fleeting such that any error was nonprejudicial"]; see also *Ghent, supra,* 43 Cal.3d at pp. 771-772 [noting that a brief reference to the impact of the victim's death on her family was "arguably inappropriate," but concluding the remarks were "brief and mild" and "the prejudicial effect of the prosecutor's comments was undoubtedly minimal or nonexistent"].)

We also observe that the trial court several times instructed the jurors not to let "bias, sympathy, prejudice, public opinion, influence your decision." "The crucial assumption underlying our constitutional system of trial by jury is that jurors generally understand and faithfully follow instructions. [Citation.]" (*People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17.) Hernandez acknowledges this foundational principle, but argues that "there is a meaningful difference between the ability of a qualified juror to accurately apply an elemental test, versus the ability to proactively disinfect oneself of insidious and inflammatory rhetoric such as that employed here." We are not persuaded, as on this record we see no basis to conclude the jurors could not follow the trial court's instructions.

For the reasons discussed, we conclude Hernandez has shown neither deficient performance by his trial attorney nor prejudice stemming from his attorney's actions.

### III. DISPOSITION

The judgment is affirmed.

_____

Greenwood, P. J.

WE CONCUR:

_____

 Danner, J.

_____

 Bromberg, J.

H050928 People v. Hernandez